BONNIE E. ESKENAZI (SBN 119401)
BEskenazi@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone:   310-553-3610
Facsimile:   310-553-0687

Marissel Descalzo (*pro hac vice admission forthcoming*)
md@descalzolaw.com
DESCALZO LAW
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Tel.: (305) 489-1018

Attorneys for CTS RESEARCH INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of<br><br>CTS Research Inc.,<br><br>                Applicant,<br><br>*Ex Parte* Application for an Order Authorizing Discovery for Use in a Foreign Tribunal Pursuant to 28 U.S.C. § 1782. | Case No.<br><br>**CTS RESEARCH INC.'S *EX PARTE* APPLICATION FOR AN ORDER AUTHORIZING DISCOVERY FOR USE IN A FOREIGN TRIBUNAL PURSUANT TO 28 U.S.C. § 1782** |

Applicant CTS Research Inc. ("Petitioner" or "CTS") respectfully submits this *Ex Parte* Application for an Order Authorizing Discovery for Use in a Foreign Tribunal Pursuant to 28 U.S.C. §1782 (the "Petition") and requests the issuance of an order permitting Petitioner to obtain documentary discovery from Google LLC ("Respondent" or "Google"), an entity that resides in this District, for use in the pending legal proceedings in the Supreme Court of British Columbia (the "Canada Court"), bearing the caption *CTS Research Inc. vs. Zachary Storm Williams*, which Petitioner filed on August 5, 2025 (the "Canada Proceeding"). A true and correct copy of the Notice of Civil Claim in the Canada Proceeding is attached as **Exhibit A** to the Declaration of Marissel Descalzo (the "Descalzo Declaration") filed concurrently hereto. In support of this Petition, Petitioner states as follows:

## I.  INTRODUCTION

1. Beginning in June 2025, Petitioner, a global investigative firm, became the target of a coordinated defamatory smear campaign designed to inflict serious reputational harm (the "Defamatory Conspiracy"). The Defamatory Conspiracy was orchestrated by Zachary Storm Williams ("Williams"), a male escort and adult entertainer residing in Vancouver, British Columbia, along with numerous other individuals whose identities are being further investigated. Williams used his social media account "@vegetabarb" on the social media platform X (formerly known as Twitter) to publish a series of false and defamatory statements about Petitioner, including allegations that Petitioner lacked mandatory licensing, engaged in harassment for hire, and participated in illegal surveillance and abuse through unlicensed investigators.

2. The reputational damage Williams has caused Petitioner to suffer was significantly exacerbated because Williams's defamatory statements were amplified and disseminated across numerous social media platforms. This coordinated online Defamatory Conspiracy included the use of paid influencers and automated bots, which rapidly spread the false allegations and compounded the harm to Petitioner's business and standing.

3. The timing and content of the defamatory posts, as well as their rapid proliferation online, strongly indicate a deliberate and malicious effort to damage Petitioner's reputation by a coordinated campaign to propagate falsehoods on social media.

4.  Petitioner's investigation has revealed that Williams's actions were not isolated, but rather part of a broader conspiracy involving numerous individuals who agreed to participate in the Defamatory Conspiracy, with many receiving payment or other benefits for their involvement (the "Co-Conspirators").

5.  In response to Williams's defamatory statements, Petitioner brought the Canada Proceeding against Williams in the Canada Court, seeking damages and injunctive relief.  *See* Descalzo Decl., Ex. A.

6.  Petitioner's ongoing investigation has identified several Co-Conspirators who utilized Gmail email accounts to communicate with Williams and/or other Co-Conspirators in furtherance of the Defamatory Conspiracy (the "Gmail Users").  Petitioner has attempted to uncover the identities and contact information of these individuals through available resources, but to date, Petitioner has been unable to do so.  A list of the email addresses (redacted for privacy) appears in the proposed subpoena attached to the Descalzo Declaration as Exhibit B.  Petitioner therefore seeks discovery from Google to obtain account information for the Gmail Users, including names, addresses, IP address, and contact information, including email addresses and phone numbers, associated with their Gmail accounts so that further discovery may be sought from them in connection with the Canada Proceeding.

7.  Petitioner believes Google is in possession, custody and/or control of documents that contain highly relevant information concerning the same Defamatory Conspiracy against Petitioner that is at issue in the Canada Proceeding, as the requested information will assist Petitioner in confirming the additional participants in Williams's Defamatory Conspiracy, allow Petitioner to seek discovery from the Gmail Users for use in connection with the Canada Proceeding, and potentially add one or more further parties to the Canada Proceeding.

8.  Furthermore, the documents and information in Respondent's possession, custody and/or control indisputably will aid the Canada Court in resolving Petitioner's defamation claims.

9.  Petitioner meets all conditions required to obtain discovery under 28 U.S.C. § 1782. First, Google is present in this judicial district, as it has its principal place of business in Mountain View, California.  Second, Petitioner seeks information from Google specifically tailored to support

its claims in the Canada Proceeding. Third, because Petitioner is a litigant in the Canada Proceeding, it is certainly an "interested person" for purposes of § 1782.

10. Moreover, the prudential considerations which the Supreme Court has encouraged district courts to consider when faced with a request for discovery under § 1782 also favor granting the discovery Petitioner seeks. Google is not a party to the Canada Proceeding; neither the nature of the Canada Proceeding nor the disposition of the court hearing would militate against the use of discovery obtained in this proceeding; Petitioner's request is not intended to circumvent any foreign or domestic restrictions on discovery; and the material Petitioner seeks consists of readily obtainable business records and thus is not unduly burdensome.

11. Further, the requisite good cause for allowing discovery to confirm the identities of anonymous Internet users exists here because Petitioner has identified the Gmail Users with sufficient specificity, identified all previous steps taken to locate and identify them, demonstrated that the action can withstand a motion to dismiss, and proven that the discovery is likely to lead to identifying information.

12. Lastly, the Court may grant this Petition *ex parte* in keeping with this District's regular course of practice for § 1782 petitions.

13. For these reasons and the reasons stated below, Petitioner respectfully seeks an order permitting Petitioner to take discovery from Google in support of the Canada Proceeding pursuant to the Subpoena attached as **Exhibit B** to the Descalzo Declaration.

## II. PARTIES

14. Petitioner is a global investigative firm incorporated under the laws of New York.

15. Google's principal place of business is located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## III. JURISDICTION AND VENUE

16. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1782 as this is an application for discovery made by a party in a proceeding currently pending in the Canada Court that seeks the production of documents in the custody, possession, and/or control of Google to be used in the Canada Proceeding.

17. Google is located at 1600 Amphitheatre Parkway, Mountain View, California 94025, United States.

18. Therefore, venue in this District is proper because Google is found in this District.

## IV. THE CANADA PROCEEDING

19. Petitioner commenced the Canada Proceeding against Williams, an individual residing in Vancouver, British Columbia, on August 5, 2025, in the Supreme Court of British Columbia. In the Canada Proceeding, Petitioner asserts claims for defamation, civil conspiracy, and injunctive relief arising from the Defamatory Conspiracy—Williams's coordinated campaign to damage the Petitioner's reputation by publishing false and defamatory statements on social media. *See* Descalzo Decl. Ex. A (Notice of Civil Claim), ¶¶ 1, 3, 4–6.

20. On various dates in June and July 2025, Williams, using the X account with the username @vegetabarb, published a series of posts that directly referenced the Petitioner and made a number of serious and defamatory allegations. *Id.* ¶¶ 15–19. These posts, which were accessible to the public at large, included false statements that the Petitioner "does not seem to have any mandatory licensing" and provides "harassment for hire." *Id.* ¶¶ 17, 19(a). Williams further alleged that Petitioner has been "gladly taking money" to carry out "disgusting dirty work!" and "carry[ing] out this abuse," and accused Petitioner of engaging in "illegal surveillance" and "relentless harassment" through "unlicensed investigators." *Id.* ¶¶ 19(b), 19(c).

21. As described in the Canada Proceeding, these statements are false, *id.* ¶ 24, and were made in the context of a broader conspiracy and defamatory smear campaign, in which Williams and other individuals acted in concert to amplify and disseminate defamatory content about the Petitioner. *Id.* ¶¶ 4-9, 20.

22. Specifically, the Defamatory Conspiracy included the use of paid influencers and online bots to rapidly and widely spread the false information. *Id.* ¶ 8.

23. Petitioner's investigation to date has identified more than 100 participants in the conspiracy—all of whom reposted and/or otherwise amplified Williams's defamatory statements in exchange for payment and/or other benefits (the "Co-Conspirators"). *See id.* ¶ 6 (listing examples of the Co-Conspirators). Further participants are likely to be identified.

24. Petitioner has utilized public resources available to identify the names and contact information of the Co-Conspirators to seek further discovery from them in furtherance of the Canada Proceeding. However, as relevant to this Petition, Petitioner's research has been unable to confirm the name and/or contact information for seven (7) Co-Conspirators who hold Gmail accounts and used those Gmail accounts in connection with their participation in the Defamatory Conspiracy (the "Gmail Users"). Descalzo Decl. ¶ 7. The email addresses of the Gmail Users are listed in the proposed subpoena, which is attached to the Descalzo Declaration as Exhibit B. Upon information and belief, the Gmail Users acted in furtherance of the Defamatory Conspiracy, including posting and/or disseminating defamatory social media content at the direction or request of and/or in concert with Williams.

25. As a result of the publication of the false statements, Petitioner has suffered significant harm to its reputation and business interests, including the loss of customers and business opportunities. *Id.* ¶¶ 35, 36.

26. As the owner of the webmail provider that hosts the Gmail Users' accounts, Google possesses relevant information regarding the identities of the Gmail Users, whose concerted actions and communications formed the controversy being litigated in the Canada Court. The Gmail Users are material witnesses with information relevant to Petitioner's claims in the Canada Proceeding, and Petitioner intends to seek discovery and depositions of those individuals.

27. As set forth in further detail in the subpoena (Descalzo Decl., Ex. B), Petitioner seeks discovery concerning documents sufficient to identify the legal names, home addresses, phone numbers, email addresses and IP addresses of the Gmail Users, whose identity Petitioner has been unable to independently confirm.

28. This information would not be readily available through discovery in the Canada Proceeding, as, upon information and belief, Google is not subject to the jurisdiction of the Canada Court.

29. Accordingly, Google possesses documents and information that bear directly upon the issues in the Canada Proceeding and which Petitioner would be unable to obtain through discovery in the Canada Proceeding.

## V.  PETITIONER IS ENTITLED TO THE DISCOVERY SOUGHT HEREBY

30. 28 U.S.C. § 1782(a) provides, in pertinent part:

   a. The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

31. Since 1948, "Congress [has] substantially broadened the scope of assistance federal courts could provide for foreign proceedings" pursuant to Section 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247–48 (2004). "The animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022).

32. To that end, courts in the Ninth Circuit have repeatedly recognized the liberal policy in favor of granting petitions for judicial assistance under § 1782. *See, e.g.*, *ZURU, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 703 (N.D. Cal. 2022) ("The statute is generous and reflects a hope that if federal courts assist with foreign litigation, foreign courts will do the same when the tables are turned."); *In re Alpine Partners, (BVI) L.P.*, 635 F. Supp. 3d 900, 908 (N.D. Cal. 2022) ("A district court's discretion is guided by the twin aims of § 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.").

33. Courts thus have distilled § 1782's language into a two-part inquiry: first, whether a district court is authorized to grant relief under the statute; and second, whether the court should grant relief in its broad discretion pursuant to the factors outlined by the Supreme Court in *Intel*. *Khrapunov v. Prosyankin,* 931 F.3d 922, 925–26 (9th Cir. 2019).

34. Finally, a § 1782 petition typically is presented and granted *ex parte* in this Circuit, to allow the applicant to serve the discovery requests. *In re Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d 894, 897 (N.D. Cal. 2021) ("Applications made under 28 U.S.C. § 1782 are typically considered

on an *ex parte* basis, since 'parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" (quoting *IPCom GmbH & Co. KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014))).

### A.    The Petition Satisfies § 1782's Statutory Requirements for Relief

35.    A district court has authority under § 1782 to grant an application for judicial assistance if: (1) the person from whom discovery is sought resides or can be found in the district in which the petition is filed; (2) the evidence is "for use in a proceeding in a foreign or international tribunal;" and (3) the request is made "by a foreign or international tribunal" or by "any interested person." 28 U.S.C. § 1782(a); *Khrapunov,* 931 F.3d at 925. As discussed below, the Petition meets each requirement, thus authorizing this Court to grant the Petition.

#### 1.    Google is Found in This District

36.    Courts in the Northern District of California have regularly held that "[i]n this district, business entities are 'found' where the business is incorporated, is headquartered, or where it has a principal place of business." *In re Todo*, No. 5:22-mc-80248- EJD, 2022 U.S. Dist. LEXIS 179150, at *5 (N.D. Cal. Sept. 30, 2022) (collecting cases); *In re Matsumoto*, No. 5:23-mc-80230-EJD, 2023 U.S. Dist. LEXIS 188538, at *5 (N.D. Cal. Oct. 19, 2023) (relying on *In re Todo* to find that the respondent was "found" within the District).

37.    In this case, Google is located in this District for purposes of this Court's § 1782 analysis. As evidenced by the California Secretary of State records, Google's office and principal place of business is located in Mountain View, California. Descalzo Decl., Ex. C (Google's Statement of Information filed with the California Secretary of State); *see also United States v. Google LLC*, 690 F. Supp. 3d 1011, 1017 (N.D. Cal. 2023) (holding the first statutory requirement under § 1782 was satisfied because "Google's headquarters are in Mountain View, California, which is located within the geographic boundaries of the Northern District of California"). As such, CTS's Petition meets the first statutory requirement.

#### 2.    The Discovery Sought Is for Use in a Foreign Proceeding

38.    To be "for use" in a foreign proceeding, a "party seeking discovery pursuant to § 1782 must show that the discovery sought is relevant to the claims and defenses in the foreign tribunal, and

the court should be 'permissive' in interpreting that standard." *Rainsy v. Facebook, Inc.,* 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018). Here, the question is not whether the discovery sought is admissible in the foreign proceeding or whether it can be used at all, but whether the evidence is relevant. *In re Alpine Partners,* 635 F. Supp. 3d 900, 909 (N.D. Cal. 2022) ("[Respondents] identify no authority that § 1782 requires a party seeking discovery to prove that it can use that information in the foreign tribunal."); *Rainsy*, 311 F. Supp. 3d at 1110 ("However, [the respondent] cites no law that § 1782 requires a party seeking to show that he can use that information in the foreign tribunal."). Indeed, "the Ninth Circuit has rejected a requirement regarding admissibility in the foreign tribunal and has also rejected a requirement that the party seeking discovery make a threshold showing that the discovery sought be discoverable in the foreign proceeding." *In re Alpine Partners*, 635 F. Supp. 3d at 909 (internal quotations omitted); *see also In re Multiflora Int'l Ltd.*, No. 20-mc-80193-DMR, 2021 U.S. Dist. LEXIS 121221, at *7-8 (N.D. Cal. June 29, 2021) (finding applicants had shown discovery sought was "directly relevant" to their fraud claims and concluding applicants had shown discovery requested was "for use" in a foreign proceeding).

39. Here, the materials Petitioner seeks relate to its defamation claims in the Canada Proceeding because the information will aid Petitioner identify the Co-Conspirators that were involved in the amplification of Williams's false statements concerning Petitioner. The Gmail Users are critical fact witnesses that Petitioner will seek to depose and from whom Petitioner will seek to obtain further relevant discovery. *See* Descalzo Decl., Ex. B. Therefore, the requested discovery is directly relevant to the Canada Proceeding. *See In re Wallis*, No. 18-mc-80147-DMR, 2018 U.S. Dist. LEXIS 183453, at *10-11 (N.D. Cal. Oct. 24, 2018) (granting Section 1782 petition where "[a]pplicants want identifying information for person(s) who have posted anonymous and allegedly defamatory material about Applicants on the internet. The identity of such person(s) are central to their defamation claim against Atas" pending in Canada).

### 3. The Discovery Is Sought by an "Interested Person"

40. Petitioner is an "interested person" within the meaning of 28 U.S.C. § 1782. An interested person is one who has significant "participation rights" in the foreign action. *Intel*, 542 U.S. at 256-57. As the Supreme Court noted in *Intel*, "litigants are included among, and may be the most

common example, of the 'interested person[s]' who may invoke § 1782." 542 U.S. at 256. Petitioner is the plaintiff in the Canada Proceeding and thus an "interested person" for the purposes of § 1782.

Accordingly, the Petition Satisfies § 1782's statutory requirements for relief.

### B.  The Petition Satisfies § 1782's Discretionary Factors for Relief

41. If the statutory requirements are met, then the district court must consider the four discretionary factors articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices* to decide whether relief is warranted: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is otherwise unduly intrusive or burdensome. 542 U.S. at 264-65; *Glob. Fishing, Inc. (In re Premises Located at 840 140th Ave. NE, Bellevue)*, 634 F.3d 557, 563 (9th Cir. 2011) Here, all of these factors weigh in favor of granting the application.

#### 1.  Google is Not a Participant in the Foreign Proceeding

42. Where, as here, discovery is sought from a person or entity that is not a party to the foreign proceeding, the need for court-ordered discovery is apparent. As the Supreme Court explained: "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid." *Intel*, 542 U.S. at 264 (internal citations omitted).

43. Google is not a party to the Canada Proceeding and, upon information and belief, has no legal presence in Canada. As such, Google is outside the jurisdictional reach of the Canada Court. Without relief from this Court, Petitioner would be unable to obtain evidence from Google critical to its defamation claims in the Canada Proceeding. Moreover, to Petitioner's knowledge, Williams—the defendant in the Canada Proceeding—does not have the requested information and documents concerning the legal identity and contact information of the Gmail Users within his possession, custody, or control, and therefore the information cannot be obtained through the Canada Proceeding.

## 2. The Canada Court is Receptive to Judicial Assistance

44. Second, with respect to determining the receptivity of a tribunal, the relevant factor is "whether the foreign tribunal is willing to consider the information sought." *In re Alpine Partners, (BVI) L.P.*, 635 F. Supp. 3d 900, 911 (N.D. Cal. 2022) (quoting *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048, 2016 U.S. Dist. LEXIS 38911, at *11 (N.D. Cal. Mar. 24, 2016)). "[I]n the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery." *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) (quoting *In re Varian Med. Sys. Int'l AG*, 2016 U.S. Dist. LEXIS 38911, at *12.

45. Indeed, this court and other Federal Courts throughout the United States have found that Canadian Courts are receptive to discovery originating in the United States through Section 1782 proceedings such as this one. *See In re Ex Parte Application Al-Baldawi*, No. 5:22-mc-80329-EJD, 2023 U.S. Dist. LEXIS 90056, at *6 (N.D. Cal. May 23, 2023) (finding that "Canadian courts will be receptive to U.S. discovery"); *In re Wallis*, 2018 U.S. Dist. LEXIS 183453, at *13) ("Canadian courts will be receptive to" evidence concerning identities behind defamatory posts); *In re N. Am. Potash, Inc.*, No. 12-20637-CV-WILLIAMS/Turnoff, 2012 U.S. Dist. LEXIS 195703, at *18 (S.D. Fla. Nov. 19, 2012) ("[T]his Court's review of Canadian case law demonstrates a receptiveness to U.S. judicial assistance").

46. Here, there is no evidence that the discovery sought in this application would offend the Canada Court in any way, and Petitioner has no reason to believe that the Canada Court would be unreceptive to the judicial assistance requested. Descalzo Decl. ¶ 6. The discovery sought would further highlight the lack of truth in the defamatory statements and illuminate the Williams' bad-faith intent in posting the defamatory statements and amplifying its dissemination worldwide through the Co-Conspirators, goals which are directly relevant to the Canada Proceeding.

5726436 – 11 –
CTS RESEARCH INC.'S *EX PARTE* APPLICATION FOR AN ORDER AUTHORIZING DISCOVERY FOR USE IN A FOREIGN TRIBUNAL PURSUANT TO 28 U.S.C. § 1782

### 3. This Petition Does Not Attempt to Circumvent Foreign Restrictions

47. Third, this application is not an attempt to circumvent any foreign discovery restrictions or other policies of Canda.[1] Descalzo Decl. ¶ 6. Petitioner has a good-faith basis for believing that it will be able to use these materials in the Canada Proceeding. *Id*. Further, Petitioner has no reason to believe that the Canada Court would be unreceptive to the judicial assistance requested; nor is Petitioner aware of any limitation on discovery imposed by the Canada Court or the law of Canada, either generally or specifically, such that the request would "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264; Descalzo Decl. ¶ 6. The Court's assistance, through granting the discovery sought herein, would permit Petitioner to appropriately and fully prosecute its claims in the Canada Proceeding.

### 4. The Discovery Requests Are Not Unduly Burdensome or Intrusive

48. Last, the Supreme Court has held that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 at 245. Generally, courts in this district have found that "requests are not burdensome when they are narrowly tailored" temporally, geographically and/or in their subject matter, "do not seek confidential information and do not 'appear to be a broad "fishing expedition" for irrelevant information.' *In re Alpine Partners*, 635 F. Supp. 3d at 913 (quoting *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016)); *see, e.g., Shueisha Inc. v. Paypal Holdings, Inc.*, No. 22-mc-80273-JSC, 2023 U.S. Dist. LEXIS 32324, at *15 (N.D. Cal. Feb. 27, 2023) ("Applicants' discovery is not burdensome because they seek names, addresses, telephone numbers, email addresses, and IP addresses associated with at most nine accounts on Witnesses' platforms within narrow temporal bounds.").

49. Under the fourth *Intel* factor, if a civil litigant in a foreign proceeding seeks to unmask an anonymous user whose speech is defamatory, the litigant must also show its request is supported by good cause. *In re Yuichiro Yasuda*, No. 19-mc-80127-TSH, 2019 U.S. Dist. LEXIS 174001, at *9

---

[1] As the Supreme Court noted in *Intel*, the Court's analysis of a Section 1782 application does not extend to the discoverability or admissibility of the information in the foreign forum. *See Intel*, 542 U.S. at 260 ("Beyond shielding material safeguarded by an applicable privilege, however, nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there.").

(N.D. Cal. Oct. 7, 2019).  Good cause exists where the litigant (1) identifies the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information.  *Id.* *9–10.

50. Here, the document requests in the proposed subpoenas are neither unduly burdensome nor intrusive.  Petitioner has tailored its requests to seek only those materials relevant to the Canada Proceeding and specifically limited its request to the "names, addresses, telephone numbers, email addresses, and IP addresses," as opposed to the contents of any communications.  *Shueisha Inc.,* , 2023 U.S. Dist. LEXIS 32324, at *15; *In re W. Face Capital, Inc.*, No. 19-mc-80090-LB, 2019 U.S. Dist. LEXIS 64388, at *1, 7 (N.D. Cal. Apr. 15, 2019) (granting Section 1782 application seeking discovery of "documents related to certain Gmail email addresses associated with the website on which the [defamatory] statements about West Face were made").  The requested information does not constitute a fishing expedition either as the information is relevant to proving the existence of a Defamatory Conspiracy between the Co-Conspirators and Williams.  Furthermore, the documents requested are ordinary business records, and a sophisticated entity such as Google should have little difficulty identifying them, reviewing them, and producing them.  Indeed, Google has a designated team that routinely handles requests for records and user account information, such as the discovery sought herein.[2]

51. Lastly, good cause supports this Petition.  ***First***, Petitioner has identified the Gmail addresses of seven (7) Co-Conspirators who participated in the Defamatory Conspiracy.  Descalzo Decl. Ex. A, ¶ 6.  These email addresses are discrete accounts that are readily identifiable by the usernames. Moreover, they necessarily were created by individuals who were required to provide identifying information as part of the account creation process.  ***Second***, as part of the overall investigation to uncover the identities of the Co-Conspirators, Petitioner exhaustively searched through online public resources in order to identify the email addresses of the Co-Conspirators, and in

---

[2] *Serving Civil Subpoenas or Other Civil Requests on Google*, Google (accessed on Aug. 10, 2025), https://support.google.com/faqs/answer/6151275?hl=en.

turn to seek to identify the individuals who own those accounts. Descalzo Decl. Ex. A, ¶¶ 6–7. This process allowed Petitioner to identify the names and contact information of other Co-Conspirators (*see id.* (listing the names and social media handles of those individuals who were identified as of the date of commencing the Canada Proceeding)). However, with respect to the Gmail Users, Petitioner was only able to locate through public resources and databases the Gmail account names, but not any identifying information about the individuals who own them. Petitioner has exhausted the public resources available to it, and thus requires Court intervention to seek the information directly from Google instead. Thus, Petitioner has shown the various steps taken to identify the Gmail Users up to this point. **Third**, the Notice of Civil Claim in the Canada Proceeding is sufficient to withstand a motion to dismiss or its procedural equivalent under Canadian law. As set forth in the Notice of Claim, and described above, Williams—individually and through the Co-Conspirators—disseminated false statements accusing Petitioner of, inter alia, violating various laws and committing criminal conduct. *See, e.g.*, Descalzo Decl. Ex. A, ¶¶ 17, 19(b), 19(c), 23 (accusing Petitioner of violating mandatory licensing laws, employing unlicensed investigators, engaging in "illegal surveillance" and "harassment," making false reports to police, and assisting in "abduction"). The defamatory statements were made with malice and have injured Petitioner's business reputation. *Id.* ¶¶ 29-31, 35. The allegations in the Notice of Claim (which are supported by ample evidence) meet the standard for pleading defamation claims and satisfying the requirements to receive discovery through a Section 1782 application. *In re Yuichiro Yasuda*, 2019 U.S. Dist. LEXIS 174001, at *9 ("Applicant has demonstrated that the anonymous defendant has committed an act that can withstand a motion to dismiss" because "[f]alsely charging a person with a crime . . . is per se defamatory"). **Finally**, the information is likely to lead to discoverable information because the information is relevant to establishing the Defamatory Conspiracy in the Canada Proceeding, including identifying material witnesses with critical information. *See Id.* at *10 ("The subpoena issued to Twitter seeks IP addresses, account information and identifying information of the anonymous defendant's Twitter account to unmask their identity, which is relevant to Applicant's anticipated defamation claim.").

### C. The Petition Should Be Granted *Ex Parte*

52. Section 1782 petitions typically are presented and granted *ex parte* because "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *IPCom GmbH & Co, KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014). "Consequently, orders granting § 1782 applications typically only provide that discovery is 'authorized,' and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued . . . ." *In re Varian*, 2016 U.S. Dist. LEXIS 38911, at *2. Thus, in keeping with this District's regular course of practice, the Petition may be granted *ex parte*.

## VI. CONCLUSION

53. For the reasons set forth herein, Petitioner respectfully requests that the Court issue an Order, pursuant to 28 U.S.C. § 1782, granting Petitioner leave to serve Google with the subpoena attached to the Descalzo Declaration as Exhibit B.

DATED: September 16, 2025

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: */s/ Bonnie E. Eskenazi*
BONNIE E. ESKENAZI (SBN 119401)

Marissel Descalzo (pro hac vice admission forthcoming)
DESCALZO LAW
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Tel.: (305) 489-1018
md@descalzolaw.com

Attorneys for
CTS Research Inc.